1   **WO**

2

3

4

5

6                   IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8

9   United States of America,              )   CV 15-0107-PHX-GMS (MHB)
                                           )   CR 09-1040-PHX-GMS
10              Plaintiff,                  )
                                           )   **REPORT AND RECOMMENDATION**
11      v.                                 )
                                           )
12  Cordae L. Black,                       )
                                           )
13              Defendant/Movant.          )
                                           )

14

15  TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT JUDGE:

16          Defendant/Movant Cordae L. Black has filed a *pro se* Amended Motion Under 28

17  U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

18  (CV 15-0107 ("CV") Doc. 8; CR 09-1040 ("CR") Doc. 542.) Plaintiff United States of

19  America (the "government") filed a Response (CV Doc. 17), and Movant filed a Reply as

20  well as several other supplemental pleadings in support of his Motion and Reply (CV Docs.

21  12, 18, 23, 24, 25, 26, 27).

22                          **BACKGROUND**[1]

23          In the Amended § 2255 Motion and supplement, Movant raises four grounds for relief.

24  In Ground One, he alleges violations of his Fifth, Sixth, and Seventh Amendment rights. He

25  claims the jury instructions were "not complete to find the defendant guilty of the charges

26  in the indictment beyond a reasonable doubt." Movant contends that (a) the amount of drugs

27

28          [1]  Unless otherwise noted, the following facts are derived from the government's
    response, exhibits and attachments submitted thereto, Movant's pleadings, as well as, various
    other documents and transcripts in this matter's extensive criminal and civil records.

1    which the district court relied upon was a separate offense, and as such, the burden of proof

2    was beyond a reasonable doubt, rather than a preponderance of the evidence; and (b) the jury

3    instruction for aiding and abetting did not contain the essential elements of knowingly and

4    intentionally, and the government convicted him of a non-existent offense. In Ground Two,

5    Movant alleges a violation of the Fifth and Thirteenth Amendments, claiming that there are

6    "illegal tactics done in stash house offenses based on racial discrimination against blacks on

7    fictional crimes." In Ground Three, he asserts a violation of his due process rights under the

8    Fifth Amendment, contending that his sentence exceeded the maximum authorized by law

9    and that the Court "was in excess of the statutory maximum regarding the drug amount." In

10   Ground Four, he alleges a violation of his due process rights under the Fifth Amendment. He

11   appears to claim that the Court lacked subject matter jurisdiction over the case because the

12   prosecutor failed to establish that there was a crime against the United States. Movant also

13   claims the government failed to provide full discovery material pertaining to the case.

14        On August 18, 2009, a federal grand jury indicted Defendant and six other co-

15   defendants on one count of conspiracy to possess with intent to distribute five kilograms or

16   more of cocaine, in violation of 21 U.S.C. § 846 (Count 1), and one count of aiding and

17   abetting use of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C.

18   §§ 924(c)(1)(A) and 2 (Count 2), based on the following facts. (CR Doc. 41.)

19        The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") developed an

20   undercover sting operation to apprehend violent home invasion crews by creating fake

21   opportunities to rob stash houses and then arresting the invaders at the beginning of the

22   robberies. (RT 4/29/10 459.) In July 2009, a confidential informant ("CI") working for ATF

23   met co-defendant Shavor Simpson, a person he had been told would be interested in doing

24   such a home invasion. (RT 4/29/10 257-58, 264, 464.) The CI then introduced Simpson to

25   undercover ATF Agent Zayas. (RT 4/28/10 258-59.) Agent Zayas told Simpson he was a

26   disgruntled courier who wanted to rob the drug traffickers for whom he worked because they

27   were not paying him enough. (RT 4/29/10 468, 473.) Agent Zayas explained his job as a

28   courier, described the stash house and how the drugs and guards were arranged, and said that

1    he saw 22 to 39 kilograms of cocaine in the living room, apart from the six or seven

2    kilograms he was picking up. (RT 4/29/10 461.)[2]

3        After meeting with Agent Zayas, Simpson approached Defendant about the robbery.

4    (RT 4/29/10 475.) Defendant responded, "Let's go." (RT 4/28/10 265.) On July 26, 2009,

5    Agent Zayas and the CI met with Simpson and Defendant, whom Simpson introduced as his

6    "right hand soldier." (CV Doc. 17.) Defendant told Agent Zayas that he knew what he was

7    doing, he had done it a few times, and had "this shit down to a science ... ." (CV Doc. 17.)

8    After the meeting with Agent Zayas, Simpson and Defendant went to co-defendant

9    Alexander's house to talk with Alexander about the robbery. (RT 4/26/10 266-67, 270-71.)

10   Co-defendants Marsh and Mahon were also at the meeting. (RT 4/28/10 270-71.) Defendant

11   and Alexander told Simpson that they had committed home invasion cocaine robberies on

12   previous occasions. (RT 4/28/10 268-70.)

13       The next day, Agent Zayas and the CI met with Defendant, Simpson, Alexander,

14   Marsh, and Mahon. (RT 4/29/10 482.) After the meeting with Agent Zayas, all of the

15   defendants met at Alexander's house to talk about the robbery. (RT 4/28/10 275.) Alexander

16   did most of the talking and organized the assault, assigned tasks, and decided who was going

17   to have guns and who would drive. (RT 4/28/10 275-78, 296.) When Alexander said that

18   Defendant was going to have a gun and go into the house, Defendant said he was "cool." (RT

19   4/28/10 297-98.) At the meeting, Defendant also said that he was going to rent a house and

20   buy himself a car with the proceeds from the robbery. (RT 4/28/10 295.)

21       On July 28, 2009, Agent Zayas met the defendants as planned. (RT 4/30/10 501-02.)

22   After the defendants followed Agent Zayas to a nearby storage facility so he could show

23   them where to put his share of the cocaine after the robbery, they were arrested. (RT 4/29/10

24   511-12.) Inside co-defendant Timmons' car, agents found three loaded handguns and a

25   loaded shotgun. (RT 4/30/10 641-55.)

26

27       [2] According to the government, recordings of Agent Zayas's conversations were admitted into evidence as Exhibits 1-4. (RT 4/29/10 468.) The transcripts of those recordings

28   were published to the jury as Exhibits 10-13. (RT 4/29/10 468-69.)

1    Before trial, the defendants moved to dismiss the indictment for outrageous

2    government conduct. (CR Docs. 110, 120, 124, 128, 131, 134, 139, 145, 159.) The district

3    court denied the motion. (CR Doc. 216.) Following a nine-day trial, the jury found the

4    defendants guilty of conspiracy to possess five kilograms of cocaine with intent to distribute

5    it and of aiding and abetting the possession of a firearm in furtherance of a drug trafficking

6    offense. (CR Docs. 269-273.)

7    In Defendant's presentence report, the probation officer initially computed

8    Defendant's Base Offense Level at 34, which reflected an amount of cocaine of 15 to 50

9    kilograms. (CV Doc. 17.) Defendant and his co-defendants each filed objections to their

10   PSRs arguing, among other things, that the government engaged in sentencing entrapment.

11   (CR Docs. 344, 369.)

12   The district court conducted an evidentiary hearing on the arguments concerning

13   sentencing entrapment. (RT 12/14/10.) At the hearing, the government argued that the

14   defendants did not prove sentencing entrapment, but urged the Court, nevertheless, to reduce

15   the Offense Level to 32 under the catch-all provision, U.S.S.G. § 5K2.0(a)(2), to "give[] the

16   benefit of the doubt to the defendants and to show that the government never intended to

17   artificially inflate the sentencing range." (RT 12/14/10 91-118.) The district court ruled that

18   the Probation Office correctly calculated the defendants' Base Offense Level at 34 and

19   specifically found that the government committed no misconduct in this case. (RT 12/14/10

20   140.) The Court agreed, however, that a two-level downward departure was "fair in this

21   case," and reduced each defendant's offense level accordingly. (RT 12/14/10 140.)

22   At the sentencing hearing, the district court found that none of the defendants had

23   proved sentencing entrapment because they had not shown that they were not predisposed

24   to commit the charged offenses. (RT 1/21/11 4-13.) The Court noted that all of the

25   defendants had criminal records, except Alexander, who had three pending warrants; the

26   defendants agreed to participate in this crime for the purpose of making a profit; the

27   defendants did not show any reluctance about participating; and the government's

28   inducement was not overly burdensome. (RT 1/21/11 7.) The Court found that the only factor

in the defendants' favor was the fact that the government suggested the criminal activity, but that this factor did not outweigh the other four factors. (RT 1/21/11 7.) The Court further found that the defendants were predisposed to commit the crime and that they had the capacity to commit it. (RT 1/21/11 8-9.) The Court also ruled that the defendants would have committed the crime if it had involved between five and 15 kilograms of cocaine, so it departed down two levels under the guidelines, for a Base Offense Level of 32. (RT 1/21/11 13-14.)

The Court determined that Defendant's Total Offense Level was 32, and his Criminal History Category was IV, which resulted in a Sentencing Guidelines range of 168 to 210 months' imprisonment. (RT 1/21/11 92.) The Court did an analysis of the § 3553 factors and found no coerciveness on the part of the government, no lack of predisposition on Defendant's part, and no basis to go below the statutory minimums. (RT 1/21/11 105.) The court sentenced Defendant to 138 months' imprisonment on Count 1, and to a consecutive 60-month sentence on Count 2. (RT 1/21/11 105.)

On direct appeal, Defendant raised three issues: (1) whether the government's sting operation constituted outrageous government conduct; (2) whether the district court correctly instructed the jury on entrapment; and (3) whether the government engaged in sentence entrapment, and whether the district court abused its discretion in applying the Guidelines applicable to drug trafficking rather than robbery. (C.A. No. 11-10036; Doc. 17, Attach. B.) In a published opinion, a divided panel affirmed the defendants' convictions and sentences, holding, among other things, that the government did not engage in outrageous conduct. (CV Doc. 17, Attach. C); see United States v. Black, 733 F.3d 294 (9th Cir. 2013). The panel majority found that the defendants responded to the proposed robbery with enthusiasm – "[t]hey were eager to commit the fictional stash house robbery, and they joined the conspiracy without any great inducement or pressure from the government." Black, 733 F.3d at 307.

The court also rejected the defendants' claims of sentencing entrapment, holding that in light of the district court's findings – that the defendants showed no reluctance about

1    participating in the crime, the government did not induce the defendants' participation in the

2    fictitious robbery but simply presented the opportunity to them, and the defendants jumped

3    at the opportunity to rob a stash house supposedly containing 23 or more kilograms of

4    cocaine for the purpose of making a profit – the defendants did not adequately prove a lack

5    of predisposition. See id. at 311-12. The panel majority further rejected the defendants'

6    alternative argument – that even if they may have been predisposed to commit a crime of

7    lesser magnitude, the government induced them to commit a greater crime subject to greater

8    punishment. See id. The majority found no evidence that the government acted to inflate the

9    amount of drugs supposedly in the house and thereby obtain a greater sentence for the

10   defendants, or that the government minimized the obstacles that the defendants had to

11   overcome to obtain the drugs. See id.

12        Notwithstanding these findings, the court alternatively found that any error was

13   harmless because, at the government's suggestion, the district court departed downward

14   under Sentencing Guidelines § 5K2.0(a)(2) from a Base Offense Level of 34 to a Base

15   Offense Level of 32, finding that the defendants likely would have committed the crime if

16   the fictitious stash house contained five to 15 kilograms of cocaine. See id. at 312. It further

17   found that the defendants would not have been willing to risk their lives and take the risk of

18   an armed robbery for fewer than five kilograms of cocaine. See id. Thus, any error would not

19   have affected the defendants' sentences. See id.

20        Defendant filed a petition for panel rehearing and rehearing *en banc* arguing that the

21   panel decision refused to apply the governing test for determining outrageous government

22   conduct, and instead implemented a new "totality of the circumstances" test. (C.A. No.

23   11-10036.) The Ninth Circuit denied the petition. (C.A. Nos. 11-10036, 11-10037, 11-10039,

24   11-10077.) On October 6, 2014, the United States Supreme Court denied Defendant's

25   petition for writ of certiorari. (C.A. No. 11-10036.)

26   \\\

27   \\\

28   \\\

**DISCUSSION**

The government claims in its Response that the grounds for relief set forth in Movant's Motion are without merit and fail to establish that Movant is entitled to relief. The government contends that Movant's Motion should be denied and dismissed with prejudice.

**1.     Ground One**

**(a)     Jury instruction on sentencing entrapment**

Movant argues that the jury was not instructed, or required to find, the amount of drugs involved; thus, he was not found guilty beyond a reasonable doubt as charged in the indictment. Movant is arguing that the rules announced in Alleyne v. United States, 133 S. Ct. 2151 (2013), and United States v. Cortes, 757 F.3d 850 (9th Cir. 2014), require sentencing entrapment to be found by a jury, rather than by a judge. Movant furthers argues that the amount of drugs which the district court relied upon was a separate offense, and as such, the burden of proof was beyond a reasonable doubt rather than a preponderance of the evidence.

In Alleyne, the Supreme Court extended the reach of its decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), and held that any fact that increases a mandatory minimum sentence is an element of the offense that must be proven to a jury beyond a reasonable doubt. See 133 S.Ct. at 2155. Further, in United States v. Cortes, 757 F.3d 850, 863-864 (9th Cir. 2014), the Ninth Circuit held that "sentencing entrapment must be tried to a jury where the defendant's argument and the evidence raise the possibility of changing the applicable statutory maximum or minimum sentences." Thus, for a sentencing entrapment instruction to be warranted, "there must be evidence from which the jury could find that [a defendant] lacked the intent or capability to deal in ... the amount charged in the indictment – or that the government inflated the amount of drugs ... to trigger the statutory minimum or maximum." Id. at 864. If no such evidence is presented, a defendant's sentencing entrapment defense will be cognizable only during sentencing. See id. at 864 n.4.

Here, the evidence presented at trial would not have required that any sentencing entrapment issue be submitted to a jury. First, according to the record, Movant demonstrated both the intent and the capability to carry out the scheme to rob the stash house of at least

five kilograms of cocaine. As the district court found, "the defendants here were clearly willing to commit this crime for 23 or more kilograms of cocaine purported to be in the stash house." (RT 1/21/11 13.) When Agent Zayas first met with Movant and explained the scenario, Movant indicated that he knew what he was doing and that he had "done it a few times." (Doc. 17.) Alexander assigned everyone roles and obtained firearms to rob the traffickers inside the stash house. (RT 4/28/10 276-78.) Movant and his co-defendants arrived at the final meeting before the would-be armed robbery with six men, two cars, multiple firearms and ammunition. (RT 4/29/10 502; RT 4/30/10 641-655.) The district court found, "the fact that defendants were able to organize and plan and came within minutes of actually attempting to commit the crime convinces me that they had the capacity to do so." (RT 1/21/11 8-9.)

Second, the record reflects that the government did not artificially inflate the amount of drugs to trigger the statutory maximum or minimum. The district court specifically found at sentencing that the defendants "would have committed it for an amount between five and 15 kilograms" of cocaine. The amount of drugs involved – which the government reduced to avoid claims of sentencing entrapment – did not result in sentencing entrapment. (RT 1/21/11 13-14.) Moreover, the Ninth Circuit found that the amount of cocaine selected for the robbery scenario was based on a review of the amounts of drugs used in stash houses in the Phoenix area, "[t]hus, there is no evidence that the government acted to 'inflate the amount of drugs supposedly in the house and thereby obtain a greater sentence for the defendant[s].'" Black, 733 F.3d at 312 (quoting United States v. Briggs, 623 F.3d 724, 729 (9th Cir. 2010); Doc. 17, Attach. C.) The Ninth Court additionally found that the district court properly rejected any sentencing entrapment claim, and that any error was harmless because the district court departed downward from the sentencing range, giving the defendants the equivalent of the sentencing entrapment remedy. See Black, 733 F.3d at 312-13.

Third, Movant never contested the type or quantity of drugs at issue; thus, the evidence did not raise the possibility of a different sentencing range. See United States v. Hernandez, 547 F.App'x 839 (9th Cir. 2013) (holding that the district court's failure to have

the jury determine the type and amount of narcotics involved did not violate the rule of Apprendi because the evidence did not raise the possibility of a different sentencing range because the defendant's theory of defense – that he wanted counterfeit clothing, not drugs – did not include any argument or evidence that he sought a different type or quantity of contraband).

Finally, the jury made a specific finding as to the amount of drugs involved. (CR Doc. 270.) Specifically, on the jury verdict form, the jurors were instructed to find the amount of cocaine Movant possessed and were given three options – cocaine (1) weighing five kilograms or more; (2) weighing at least 500 grams but less than five kilograms; or (3) weighing less than 500 grams. (CR Doc. 270.) The jury found that Movant possessed cocaine weighing five kilograms or more (CR Doc. 270), supporting Movant's conviction and sentence, and Movant was not sentenced to any enhanced mandatory minimum sentences.

### (b)    Jury instruction on aiding and abetting

Movant argues that the jury was not given a correct aiding and abetting instruction, as set forth in Rosemond v. United States, 134 S.Ct. 1240 (2014), a case decided after Movant's trial. Movant argues that in light of Rosemond, the evidence did not support his conviction for aiding and abetting the use and carrying of a firearm during a crime of violence. Movant contends that not only was the government allowed to entrap him, but the indictment and jury instruction did not contain the essential elements of "knowingly and intentionally," and the government convicted him of a nonexistent offense. Movant further argues that because the Supreme Court had to define the aiding and abetting statute, 18 U.S.C. § 2, in Rosemond, that this was a substantive change in law or clarification of a criminal statute—not a new rule of constitutional law—and as such, must be applied retroactively.

In Rosemond, the Supreme Court examined 18 U.S.C. § 2, the federal aiding and abetting statute under which the appellants in that case were convicted. The Court explained that "an aiding and abetting conviction requires ... a state of mind extending to the entire crime." Id. at 1248. With respect to an armed drug sale under 18 U.S.C. § 924(c), the Court

1    held that an aiding and abetting conviction requires the government to prove the defendant

2    had "advance knowledge" that a coconspirator would use or carry a gun as part of the crime's

3    commission. Id. at 1243. "[A]dvance knowledge," continued the Court, "means knowledge

4    at a time the accomplice can do something with it—most notably, opt to walk away." Id. at

5    1249-50.

6         Rosemond was decided on March 5, 2014 and, to date, no court has found Rosemond

7    retroactively applicable to cases on collateral review. See, e.g., Cardena-Sosa v. United

8    States, 2015 WL 2131306, at * 9 (N.D.W.Va. May 6, 2015) (holding, and also listing cases,

9    that Rosemond is not retroactively applicable to cases on collateral review); Aquil v. Butler,

10   2015 WL 1914404, at *4 (E.D.Ky. April 27, 2015) ("[T]he consensus among district courts

11   which have addressed this issue have determined that because the holding was dictated by

12   established precedent, Rosemond does not apply retroactively to cases on collateral review."

13   (listing cases)); Patton v. Maiorana, 2015 WL 1649937, at *2 (W.D.La. Apr. 13, 2015)

14   ("Unsurprisingly, we are unable to point to any precedent from this court or that of others

15   that supports such retroactive allocation of Rosemond on collateral review." (listing cases));

16   Watford v. Matevousian, 2015 WL 1498859, at * 3 (E.D.Cal. March 31, 2015) (refusing to

17   apply Rosemond retroactively to the prisoner's § 2241 petition because the Supreme Court

18   did not identify its holding as being retroactively applicable, and listing cases holding that

19   Rosemond is not retroactive on collateral review); Metz v. United States, 2015 WL 566766,

20   at *3 (W.D.La. Feb. 9, 2015) ("the Supreme Court has not held that Rosemond applies

21   retroactively, and no circuit court has given Rosemond such effect"). Accordingly, Movant

22   is not entitled to any relief.

23        In sum, the Court finds that Movant's claims as alleged in Ground One fail. The Court

24   will recommend Ground One be denied.

25        **2.    Ground Two**

26        In Ground Two, Movant asserts that this kind of case (a reverse sting involving a stash

27   house) is based on racial discrimination and faulty government tactics, which "accomplish

28   indirectly some other object and that object is to put minorities into involuntary servitude by

the thirteen [sic] Amendment due to legal fiction." Movant argues that because of this, he was "not duly convicted pursuant to the Constitution."

Construing Movant's claim as one of outrageous government conduct, this claim has previously been raised on direct appeal and decided against Movant by the Ninth Circuit Court of Appeals. See <u>Black</u>, 733 F.3d at 304-10, 313. Accordingly, Movant is precluded from raising it again in his § 2255 Motion. See <u>United States v. Dunham</u>, 767 F.2d 1395, 1396 (9th Cir. 1985).

### 3.    Ground Three

In Ground Three, Movant alleges that he received a sentence that was 18 months in excess of the statutory maximum in Count 1.

Contrary to Movant's belief, the district court did not sentence Movant in excess of the statutory maximum. The record demonstrates that Movant was convicted in Count 1 of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846. (CR Doc. 41, 270, 404.) Title 21 U.S.C. § 841(b), provides in pertinent part that a person who violates subsection (1)(A)(ii) "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." Thus, the maximum sentence in Count 1 is not 10 years; rather, the minimum sentence is 10 years and the maximum sentence is life. The district court therefore did not sentence Movant in excess of the maximum sentence when it sentenced him to 138 months on Count 1.

### 4.    Ground Four

#### (a)    Sufficiency of the evidence

Movant claims that jurisdiction was lacking in this case because no crime was committed against the United States because the stash house and cocaine were fictitious. Movant also argues that he should have been charged under 18 U.S.C. § 922(g)(1), the prohibited possessor statute, rather than aiding and abetting the use of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A). Although Movant characterizes his claim as one of "lack of jurisdiction," he is essentially asserting a "sufficiency of the evidence" claim. In any event, although the stash house and cocaine were

1   fictitious in this case, the Court had jurisdiction and sufficient evidence supported Movant's

2   conviction because Movant was charged with conspiracy to possess with intent to distribute

3   five kilograms or more of cocaine—not the actual robbery of cocaine.

4          "[A] conspiracy conviction may be sustained even where the goal of the conspiracy

5   is impossible." United States v. Fiander, 547 F.3d 1036, 1042 (9th Cir. 2008) ("It is

6   elementary that a conspiracy may exist and be punished whether or not the substantive crime

7   ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in

8   itself."); see United States v. Williams, 547 F.3d 1187, 1197 (9th Cir. 2008) (holding that the

9   non-existent status of the drug stash house, that was the subject of the defendant's conspiracy

10  to interfere with interstate commerce by robbery, did not render the conspiracy impossible).

11  The Ninth Circuit as well as other circuit courts have affirmed the use of a stash-house

12  robbery scenario in a sting operation, including this case. See, e.g., United States v. Hullaby,

13  736 F.3d 1260 (9th Cir. 2013); Black, 733 F.3d at 294; United States v. Rodriguez, 360 F.3d

14  949, 952-53, 960 (9th Cir. 2004) (drug trafficking convictions affirmed where defendants

15  agrees to "conduct a fictitious raid of the stash house" where "they would steal

16  approximately 25 kilograms of cocaine"); United States v. Corson, 579 F.3d 804, 806, 813

17  (7th Cir. 2009) (drug trafficking conspiracy convictions affirmed where there "never was any

18  stash house to rob" and fictitious drug amount was 15 to 20 kilograms of cocaine); United

19  States v. Sanchez, 138 F.3d 1410, 1412-14 (11th Cir. 1998) (convictions affirmed where

20  government created "a fictitious crime for [the defendants] to commit [a] robbery of a

21  non-existent house allegedly stocked with" 50 kilograms of cocaine and 300 pounds of

22  marijuana).

23         Moreover, the Court finds that the government presented sufficient evidence of

24  Movant's involvement in the conspiracy. Although Movant did not raise a "sufficiency of

25  the evidence" argument on direct appeal in regards to his conspiracy conviction, the Ninth

26  Circuit found sufficient evidence to sustain the conspiracy convictions of co-defendants

27  Mahon and Timmons – two co-defendants who had an equal or lesser role in the conspiracy

28

than Movant. <u>United States v. Black</u>, 543 F.App'x 664, 669-70 (9th Cir. 2013). For example, with regards to Mahon, the government presented the following evidence:

> • Simpson testified that Mahon was present at a July 26 meeting at Alexander's house that took place to discuss the home invasion.

> • Agent Zayas testified that Mahon attended a July 27 meeting with him, along with Black, Alexander, Simpson and Marsh. The day before, Zayas had informed Simpson and Black to bring with them on July 27 any other individuals who would be participating in the robbery. When the group arrived, and only Black, Alexander and Simpson exited the vehicle and began speaking with Zayas about the robbery, Zayas asked Alexander to get the other two individuals, including Mahon, from the vehicle if they would be participating in the robbery, and Alexander did so. Zayas further testified that all of the meeting attendees were engaged in the discussion and that he observed Mahon nodding his head during the meeting.

> • Simpson testified that Mahon was present at a July 27 meeting at Alexander's house, along with Black, Simpson, Marsh and Alexander, that took place after the meeting with Agent Zayas to discuss the robbery.

> • Simpson testified that at the July 27 meeting at Alexander's house, Alexander assigned to Mahon the role of entering the stash house and carrying a firearm.

> • Agent Zayas testified that Mahon showed up on July 28, the date of the fictitious robbery, along with Timmons, Alexander and Black. He further testified that when the two vehicles with defendants followed him to the storage facility, Mahon got out of the vehicle and Zayas showed Mahon the unit in which the crew was to place Zayas' portion of the drugs.

<u>Id.</u> The Ninth Circuit found: "[t]his evidence is sufficient for the jury to have reasonably found that Mahon was a knowing participant in the conspiracy, and the government's failure to provide evidence of Mahon's oral assent to the conspiracy does not undermine his conviction. *See United States v. Perlaza*, 439 F.3d 1149, 1177 (9th Cir. 2006) ("[O]nce the existence of a conspiracy is established, a defendant may be convicted of knowing participation therein if the evidence establishes, beyond a reasonable doubt, even a slight connection between the defendants and the conspiracy." (internal quotation marks omitted)); *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001) ("A connection to the conspiracy may be inferred from circumstantial evidence."); *United States v. Esparza*, 876 F.2d 1390, 1392 (9th Cir. 1989) ("Proof of the defendant's connection to the conspiracy requires a showing that the defendant knew of the existence of the conspiracy and acted with the intent to further its goals.")." <u>Id.</u>

1    Thus, considering the evidence presented by the government regarding Movant's

2  involvement in the conspiracy coupled with the Ninth Circuit's ruling in regards to the other

3  co-defendants in this matter, Movant is not entitled to relief on this basis.

4    **(b)    Disclosure of Brady material**

5    Movant contends that the prosecutor did not turn over requisite discovery. Movant

6  essentially argues that said material would have shown that he was entrapped by the

7  government and that the government engaged in outrageous government conduct. In his

8  direct appeal, Movant raised the issues of outrageous government conduct and whether the

9  district court correctly instructed the jury on entrapment. In its opinion, the Ninth Circuit

10  concluded that the government did not engage in outrageous conduct. See Black, 733 F.3d

11  at 310. And, in its memorandum decision, the Ninth Circuit rejected Movant's contention

12  that the entrapment jury instruction was erroneous. See Black, 543 F.App'x at 667-68. In the

13  same decision, the court rejected Alexander and Mahon's argument that they were entrapped

14  by the government and that the government failed to disprove entrapment. The Ninth Circuit

15  found that "[t]he government presented sufficient evidence from which the jury could

16  conclude that the defendants were not induced by government agents to commit the crimes

17  charged." Id.

18    Therefore, because these issues have already been resolved by the Ninth Circuit on

19  direct appeal, Defendant is precluded from relitigating them again in his § 2255 motion. See

20  Dunham, 767 F.2d at 1396. Movant's claims as alleged in Ground Four fail. The Court will

21  recommend Ground Four be denied.

22  \\\

23  \\\

24  \\\

25  \\\

26  \\\

27  \\\

28  \\\

**CONCLUSION**

Having determined that Movant's claims as alleged in Grounds One through Four fail, the Court will recommend that Movant's Amended Motion to Vacate, Set Aside, or Correct Sentence be denied and dismissed with prejudice.[3]

**IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (CV Doc. 8; CR Doc. 542) be **DENIED and DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that Movant's request for an evidentiary hearing (CV Doc. 25) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further

---

[3] Movant has filed a one-page motion requesting an evidentiary hearing. A prisoner is not entitled to an evidentiary hearing on his habeas claims if "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). As demonstrated above, Movant is not entitled to relief on any of the grounds presented in his Motion.

review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 21st day of December, 2015.

_Michelle H. Burns_

Michelle H. Burns
United States Magistrate Judge